IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GALLUP MED FLIGHT, LLC,

    Plaintiff,

vs.                                                                      Civ. No. 16-01197 KG/KBM

PHOENIX INSURANCE COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant's Motion for Attorneys' Fees, Costs, and Expenses, filed on October 4, 2017. (Doc. 47). Plaintiff's Response was filed on October 18, 2017, and Defendant's Reply was filed on November 1, 2017. (Docs. 48, 49). Upon review of the briefing, exhibits, and relevant law, the Court grants Defendant's Motion for Attorneys' Fees, Costs, and Expenses.

*A. Background*

On September 20, 2017, the Court held a hearing on Plaintiff's First Amended Motion to Dismiss Without Prejudice. (Doc. 39). In that hearing, Plaintiff represented that it had been purchased by Air Medical Group Holdings, Inc. ("AMGH"), and did not know if AMGH would continue to pursue this litigation. On September 21, 2017, the Court entered an Order granting Plaintiff's First Amended Motion to Dismiss Without Prejudice, dismissing Plaintiff's claims without prejudice. (Doc. 45). Additionally, the Court granted Defendant's request for an award of attorney's fees and costs, and required further briefing on the amount of the attorney's fees and costs. In deciding to award attorney's fees and costs, the Court relied on Fed. R. Civ. P. 41(a)(2) and corresponding case law.

In response to the order for further briefing, Defendant now requests $40,516.52 in attorneys' fees, including the gross receipts tax, and $30,718.57 in litigation costs. (Doc. 47) at 2. Plaintiff argues that Defendant's request should be denied for three reasons. (Doc. 48) at 4. First, Plaintiff argues that Defendant improperly removed the case from state court and so this Court lacks subject matter jurisdiction over any part of this case. *Id.* Second, Plaintiff argues that Defendant's Motion for Leave to File a Sur-Reply to the Motion for Judgment on the Pleadings (Doc. 25) was "improper and a waste of time." *Id.* Third, Plaintiff argues that Defendant should not be awarded any expert witness costs or costs for discovery because (1) any expert work or discovery will be useful if there is subsequent litigation, and (2) Defendant did not provide enough information to determine whether the experts' costs were reasonable. *Id.* at 4-5.

B. Fees and Costs

    *1. Basis for the Award of Attorneys' Fees and Costs*

        *a. Rule 41(a)(2)*

The Court's basis for awarding fees and costs when granting motions to dismiss without prejudice is grounded in Fed. R. Civ. P. 41(a)(2). The Tenth Circuit is clear that "a district court may seek to reimburse the defendant for his attorney's fees because he faces a risk that the plaintiff will refile the suit and impose duplicative expenses upon him." *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997) (citing *Cauley v. Wilson*, 754 F.2d 769, 771-72 (7th Cir. 1985). "In awarding reasonable attorney's fees and costs . . . this Court reasoned that costs and fees in preparing federal court filings are rarely *de minimis*." *Hunt v. Tuls Cattle Co. III*, 2017 WL 3207833, at *4 (D.N.M.) (citation omitted). Moreover, an award of costs and fees is not unusual when the Court dismisses claims without prejudice under Fed. R. Civ. P. 41(a)(2). *Id.*;

*see also Rippetoe v. Taos Living Ctr.*, 2013 WL 12138880, at *3 (D.N.M.) (noting that "[o]ther circuits have ruled that such costs should be awarded, especially when the plaintiff plans to refile in state court, and many district courts have ruled accordingly"). Consequently, as the Court previously decided, Rule 41(a)(2) allows the Court to award Defendant attorney's fees and costs in this situation.

### b. Subject Matter Jurisdiction

Plaintiff, however, argues that fees and costs are not recoverable because Defendant improperly removed the case from state court, and the Court, therefore, does not have subject matter jurisdiction under which to award attorney's fees and costs. Plaintiff argues that removal was improper under either a federal question or diversity jurisdiction theory. Specifically, Plaintiff argues that there was no federal question presented in its Complaint for Debt and Money Due and Breach of Contract ("Complaint"). (Doc. 48) at 5-6. Additionally, Plaintiff argues that diversity jurisdiction does not exist here because the amount-in-controversy requirement was not met. *Id.* at 6-7. Because the Court finds that it has diversity jurisdiction it need not reach the federal question issue.

Plaintiff does not dispute that complete diversity under 28 U.S.C. § 1332(a)(1) exists because Plaintiff is a New Mexico resident and Defendant is a resident of Connecticut. *See* (Doc. 1) at 1; (Doc. 8) at 1, ¶ 1. Rather, Plaintiff argues that there is not an amount-in-controversy exceeding $75,000. The Court disagrees. The Court notes that it can consider punitive damages as well as compensatory damages in determining the amount-in-controversy. *Zozaya v. Standard Ins. Co.*, 2015 WL 11118066, at *4 (D.N.M.) ("[i]t is well established that punitive damages are included when calculating the amount in controversy.").

Plaintiff's Complaint contains three counts, Collection of Debt and Money Due ("Count I"), Breach of Contract ("Count II"), and Breach of Covenant of Good Faith and Fair Dealing ("Count III"). In its prayer for relief, Plaintiff requests compensatory damages in the amount of $44,930.36, and "[a]ny other interest, damages, or relief available at law or equity." (Doc. 1-1) at 5. The Court construes the prayer for relief to include a request for punitive damages under any of Plaintiff's claims.

Under Plaintiff's Count III claim, Plaintiff alleges Defendant acted in bad faith. *See* (Doc. 1-1) at 4, ¶¶ 31, 32. Defendant cites several cases in which punitive damages were awarded against insurance companies, like Defendant, for claims involving allegations of bad faith. *See, e.g.*, *Capstick v. Allstate Ins. Co.*, 998 F.2d 810, 812, 823 (10th Cir. 1993) (finding jury's $2 million punitive damages award for bad faith reasonable). Moreover, under New Mexico law, punitive damages may be obtained if compensatory damages are awarded and if a jury finds a defendant acted in bad faith. *See* UJI 13-1827 NMRA (1998) (detailing punitive damages awarded if directly liable party acted in bad faith); UJI 13-1718 NMRA (1998) (detailing punitive damages awarded for insurance company's bad faith actions, reckless disregard of plaintiff's interest, dishonest judgment, or otherwise malicious, willful or wanton action). Thus, the Court considers Plaintiff's allegations of bad faith in its Count III claim to include a claim for punitive damages. The combination of punitive damages and compensatory damages could exceed $75,000, the amount-in-controversy required under 28 U.S.C. § 1332(a). Therefore, the Court finds that it has subject matter jurisdiction over this case and can award appropriate attorney's fees and costs under Rule 41(a)(2).

*2. Reasonable Attorney's Fees*

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). Courts make the lodestar calculation by multiplying the attorney's reasonable hourly rate by the number of hours the attorney reasonably expended. *Id.* The Court begins its analysis by examining whether the hourly rates claimed by Defendant are reasonable.

*a. Reasonable Hourly Rates*

The party requesting attorney's fees bears the burden of showing that the requested rates are consistent with the prevailing rates in the community. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) ("party requesting the fees bears 'the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" (citation omitted)). To carry that burden, the movant must show by "satisfactory evidence — in addition to the attorney's own affidavits — that the requested" hourly rates are the prevailing market rates. *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). This Court has considered awards of attorney's fees in other cases to determine whether the requested fees are in line with those prevailing in the community. *See New Mexico ex rel. Balderas v. Valley Meat Co., LLC*, 14cv1100-JB-KBM, (Doc. 34) at 49-51 (D.N.M. Dec. 14, 2015) (noting "[o]n a number of occasions, the Court has awarded fees to attorneys with comparable experience at this rate or even higher rates"); *see also Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 n.7 (D.C. Cir. 1982) ("It should be recognized that fees awarded in other cases are probative of the appropriate community rate only if they were determined based on actual

evidence of prevailing market rates, the attorneys involved had similar qualifications, and issues of comparable complexity were raised.").

Here, Defense counsel submitted an affidavit detailing her hourly rate, her associate's hourly rate, and her paralegal's hourly rate. (Doc. 47-1) at 3. For their services, counsel, a shareholder at her firm and lead counsel, charged $285 per hour; her associate charged $225 for the first two months, and $195 thereafter; and, the paralegal charged $110 per hour. *See id.* at 3, 13-54. Defendant did not obtain an affidavit from another attorney familiar with the prevailing market rates in Albuquerque or the state of New Mexico. Instead, Defendant offered a string citation of cases from this Court and New Mexico state courts in which the courts awarded attorney's fees with hourly rates between $150 per hour to $375 per hour. *Id.* at 4.

For example, in *New Mexico Turn Around v. City of Albuquerque*, United States District Court Judge Martha Vazquez concluded that a plaintiff met her burden of showing reasonable hourly rates with an affidavit from a New Mexico practicing attorney. 11-cv-00536-MV-RHS, (Doc. 48) at 14-15 (D.N.M. May 22, 2013). In *New Mexico Turn Around*, the affidavit from the practicing attorney, who was also an expert witness on attorney's fees, supported a request of $175 per hour for an attorney with over five years of experience, $225 for an attorney with over seven years of experience, $275 for an attorney with over ten years of experience, and $350 for an attorney with over thirty-eight years of experience. *Id.* at 14. Defense counsel is requesting $285 an hour as an attorney with over twenty-three years of experience, which puts her rate slightly above the rate for an attorney with ten years' experience and significantly less than the rate for an attorney with thirty-eight years' experience. Associate counsel, an attorney with over six years' experience, is requesting a rate of $225 per hour for the first two months of service and $195 per hour thereafter. These rates fall between the $175 per hour rate for an attorney with

6

five years' experience and $225 per hour rate for an attorney with over seven years' experience. (Doc. 47-1) at 2-3.

Notably, Plaintiff does not argue that Defense counsels' hourly rates are unreasonable. Plaintiff offers that if fees are awarded, the lower rate of Defense counsels' rates should be used. (Doc. 48) at 10. The Court assumes that Plaintiff is referring to Associate counsel's $195 per hour. Plaintiff, however, does not offer any argument as to why the rate should be limited to $195 per hour. Considering the rates in *New Mexico Turn Around*, the Court is persuaded that the hourly rates are reasonable.

Next, the Court considers Defendant's paralegal fees. *Cf. Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) (holding that reasonable attorney's fees under 42 U.S.C. § 1988 include individuals "whose labor contributes to the work product for which an attorney bills her client," including paralegals). Defense counsel specifies the paralegal hourly rate is $110 per hour but does not explain why that paralegal hourly rate can be found reasonable. The paralegal hourly rate is greater than the rate used in other New Mexico cases. *See, e.g.*, *Payne et al. v. Tri-State Careflight, LLC, et al.*, 14-cv-1044-JB-KBM, (Doc. 176) at 8, 33-34 (D.N.M. Sept. 30, 2017) (using $90 hourly rate for paralegals' fees calculation); *Garcia v. City of Farmington*, 12-cv-383-JCH-SCY, (Doc. 179) at 5-6 (D.N.M. Dec. 28, 2016) (using $85 hourly rate for paralegal's fees calculation); *Mitchell, et al. v. Moya, et al.*, 95-cv-00138-MV, (Doc. 34) at 8-9 (D.N.M. Jan. 29, 1998) (holding $60 hourly rate was reasonable based on the Court's knowledge of prevailing market rates in area). To be consistent with recent decisions, and in the absence of countervailing evidence, the Court reduces the paralegal rate here to $90 per hour.

*b. Reasonable Hours*

The Court next considers the reasonableness of the claimed expended time. The movant bears "the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998). Ultimately, the Court has an obligation to "carefully scrutinize the total number of hours reported to arrive at the number of hours that can reasonably be charged to the losing party, much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients whose fee arrangement requires a detailed report of hours expended and work done." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987).

As a preliminary matter, the Court considers Plaintiff's argument regarding the reasonableness of expending time on preparing and filing the Motion for Leave to File a Sur-Reply to the Motion for Judgment on the Pleadings ("Motion for Leave to File a Sur-Reply") (Doc. 25). Plaintiff argues that Defendant misunderstood Plaintiff's briefing on its Motion for Judgment on the Pleadings (Docs. 8 and 21) and, therefore, Defendant should not have sought permission to file a surreply. (Doc. 48) at 8-9. Defendant, on the other hand, argues that it was justified in filing and briefing its Motion for Leave to File a Sur-Reply because Plaintiff attached, for the first time, an exhibit from its Vice President to its Reply to the Motion for Judgment on the Pleadings. *See* (Doc. 49) at 6-7.

Although the Court did not decide the Defendant's Motion for Leave to File a Sur-Reply, it recognizes that this Court generally does not grant leave to file a surreply unless the moving party includes new information in a reply that the nonmoving party needs an opportunity to address. *See Capitol Specialty Ins. Corp. v. SouthWest Clubs, Inc.*, 2014 WL 11515028, at *8 (D.N.M.) ("Courts generally do not grant a party leave to file a sur-reply unless the opposing party's reply brief includes new information that the responding party needs an opportunity to address."). Moreover, the Court recognizes granting a motion for leave to file a surreply is discretionary. *See Schmidt v. Shah*, 696 F. Supp. 2d 44, 59 (D.D.C. 2010) (citing *Baloch v. Norton*, 517 F. Supp. 2d 345, 349 n.2 (D.D.C. 2007) ("The decision to grant or deny leave to file a surreply is committed to the sound discretion of the court.")).

The Court determines that it was reasonable for Defendant to file the Motion for Leave to File a Sur-Reply. Under D.N.M.LR-Civ. 7.4(b), "the filing of a surreply requires leave of the court." To comply with Rule 7.4(b), Defendant requested leave to file a surreply to the Motion for Judgment on the Pleadings because of its belief that Plaintiff raised new arguments in Plaintiff's reply. Additionally, Defendant requested an opportunity to discuss and challenge the new affidavit from Plaintiff's Vice President, which stated that Plaintiff "charges the same fees/rates to every passenger/patient." (Doc. 21-1) at 1, ¶ 5. This particular piece of evidence is important because the crux of the dispute is whether Defendant owes Plaintiff what Plaintiff calls its "usual and customary fee." (Doc. 8) at 17; (Doc. 21) at 1 ("the decision on [Plaintiff's Motion for Judgment on the Pleadings] can be simply boiled down to whether the Airline Deregulation Act . . . or the New Mexico Workers' Compensation Act . . . either limit or allow [Plaintiff] to charge its usual and customary rates for air ambulance travel"). Defendant did not have a chance to respond to this piece of evidence in its response, and considering the dispositive

9

nature of a motion for judgment on the pleadings, Defendant's request to file a surreply was reasonable. Therefore, the Court finds that Defendant's time spent filing and briefing its Motion for Leave to File a Sur-Reply should be included in the calculation of attorneys' fees. *See* (Docs. 25, 30).

Defendant offers detailed invoices with descriptions of services, hours spent on those services, the amount billed to the client, and who did the work, and a table with hours and fees. (Doc. 47-1) at 13-56. The following table summarizes Defendant's requested attorneys' fees, calculated by multiplying the reasonable hourly rate of each individual by the number of reasonable hours worked by that individual:

| **Timekeeper** | **Hours** | **Fees** |
| --- | --- | --- |
| Jennifer A. Noya – Shareholder | 33.6 | $9,576.00 |
| Jennifer L. Bradfute – Associate | 128.8 | $25,920.00 |
| LeAnn V. Gallegos - Paralegal | 20.3 | $1,827.00[1] |
| **Total:** | 182.7 | $37,323.00 |

As Defense counsel highlights, these bills were created in preparing and filing a notice of removal, answering Plaintiff's Complaint, preparing a joint status report, appearing for a Fed. R. Civ. P. 16 scheduling conference, submitting Fed. R. Civ. P. 26 initial disclosures, responding to Plaintiff's Motion for Judgment on the Pleadings, participating in discovery, responding to Plaintiff's Motion to Dismiss Without Prejudice, and traveling to and from Las Cruces for the hearing on Plaintiff's Motion to Dismiss Without Prejudice. (Doc. 47-1) at 3. Defendant has met its burden by providing meticulous, contemporaneous time records showing what task each attorney or staff member billed.

---

[1] Because the Court has reduced Ms. Gallegos's hourly rate from $110 per hour to $90 per hour, the amount charged for her services decreases from $2,233.00, to $1,827.00.

10

Defendant reports the total hours billed at 182.7 hours, which, when multiplied by the appropriate rate for each individual, amounts to $37,323.00, without applicable gross receipts tax. (Doc. 47-1) at 13. Therefore, the Court will award $37,323.00, plus the applicable gross receipts tax, as reasonable attorneys' fees.

3. Costs

With respect to costs, Plaintiff argues that the Court should exclude the costs associated with Defendant's expert witnesses and discovery. (Doc. 48) at 9-10. Plaintiff reasons that Defendant could utilize the expert witnesses and discovery in possible future litigation. *Id.*

    *a. Request*

Defendant's cost calculation consists of $30,059.66 in expert witness fees and an expert witness report; $411.00 in filing fees; $9.30 in fees for PACER downloads; and $238.61 in travel expenses relating to the September 20, 2017, hearing. (Doc. 47) at 6; *see also* (Doc. 47-1) at 55-56. Thus, Defendant requests a total of $30,718.57 in costs.[2]

    *b. Plaintiff's Argument that Expert Witnesses Efforts and Discovery will be Useable in Future Litigation*

Plaintiff argues that it should not have to pay costs because the discovery conducted here and the work of Defendant's expert witnesses can be used in subsequent litigation. (Doc. 48) at 9-10. The idea that discovery and the expert witnesses efforts expended in this lawsuit will be useful in subsequent litigation concerns the Court. Specifically, it remains to be seen whether this case will be re-filed. At the September 20, 2017, hearing, Plaintiff explained that it did not

---

[2] According to the Court's calculation, the total costs come to $30,721.72. The difference between the Court's calculation and Defendant's calculation is $3.20. This difference is explained by considering Ms. Noya's affidavit, which notes the amount for travel expenses to be $238.61, which is $3.20 less than the $241.81 noted in the brief. *See* (Doc. 47-1) at 5, ¶13; *id.* at 53. The Court will use the lower travel expense amount and, therefore, only consider Defendant's request for $30,718.57.

know whether AMGH will pursue future litigation. The Court also is sensitive to Plaintiff's position, recognizing that it cannot speak for AMGH. However, after considering Plaintiff's statements at the hearing and the briefing, it is unclear when the sale to AMGH took place and how that sale related to Plaintiff's Fed. R. Civ. P. 41(a)(2) motion for voluntary dismissal. Thus, the Court is simply not convinced that work by Defendant's expert witnesses or discovery will be useable in future litigation. *But see Mullen v. Heinkel Filtering Systems, Inc.*, 770 F.3d 724, 729 (8th Cir. 2014) (holding district court did not abuse discretion when refusing to award fees and costs under Fed. R. Civ. P. 41(a)(2) because plaintiff commenced case in state court after voluntary dismissal, plaintiff had not served discovery on one party, appellate court found efforts expended by defendants can be used in future litigation, and at oral argument defendant could not point out what discovery could not be used in state case.)

### c. Reasonableness of Expert Costs

Defendant's costs consist almost entirely of expert witness costs. Defendant states that it "incurred $1,985.28 in expert witness fees for services provided by its testifying medical expert and $28,074.38 in expenses for its expert concerning the reasonableness of Plaintiff's rates." (Doc. 47) at 6. These costs amount to $30,059.66. Plaintiff argues in its response that it cannot adequately respond to Defendant's request for expert witness costs because Defendant failed to include detailed bills in its motion. *See* (Doc. 48) at 9. Plaintiff contends that awarding the expert witness costs would amount to an abuse of discretion because Plaintiff had no chance to respond to these costs and the costs were not adequately explained. *Id.*

The Court recognizes that Defendant's motion contains invoices from Defendant's expert witnesses that are not incredibly detailed. *See* (Doc. 47-1) at 55-56. For example, Defendant submitted with its motion an invoice from its testifying medical expert which includes two

12

entries, one for record review, analysis, and report preparation, and another entry for phone conference. *Id.* at 55. The Court finds this invoice to be insufficiently detailed to be included in a reasonable calculation of cost, and, therefore, will exclude the medical expert's costs in the reasonable costs calculation.

The second invoice is from Defendant's expert on air ambulance rate fees which notes two entries for professional services and expenses incurred. The Court considers the rate expert's invoice to be brief, containing $26,737.50 for professional services, and $1,336.88 for expenses incurred. However, in its reply, Defendant provides more detail of the hours worked by its rate expert witness and his associate. *See* (Doc. 49-6) at 1-2. For example, the expert's invoice notes that 87.5 hours were billed to Defendant. *Id.* Nonetheless, this invoice raises concerns for the Court. Specifically, the Court finds some of the entries to be cumulative, with several services appearing to be repeated without any clear good reason. Therefore, the Court will reduce the number of billed hours by half, from 87.5 hours to 43.75 hours. And to make the calculation simple for all parties, the Court will divide the $26,737.50 for professional services in half, arriving at $13,368.75. By adding the expenses incurred, the costs of Defendant's expert witnesses is $14,705.63.

The total costs are $15,364.54, including the expert witness costs, filing fees, fees for PACER downloads, and travel expenses.

*C. Conclusion*

For all of the above reasons, the Court grants Defendant's Motion for Attorneys' Fees, Costs, and Expenses.

IT IS, THEREFORE, ORDERED that

1. Defendant's Motion for Attorneys' Fees, Costs, and Expenses (Doc. 47) is granted;

2. Defendant is awarded $37,323.00, plus the applicable gross receipts tax, in reasonable attorneys' fees; and

3. Defendant is awarded reasonable costs of $15,364.54; and,

4. Plaintiff must pay the reasonable fees and costs within thirty (30) days of entry of this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE